**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **REIDAR CARROLL ARDEN** | : | **NO. 98-379** |

**MEMORANDUM**

**Gene E.K. Pratter, J.** **July 7, 2009**

**INTRODUCTION**

Fifteen years' worth of Reidar Arden's telemarketing and other activities at various locations in the Western Hemisphere culminated in his conviction by a jury, part of which is now challenged because, according to Mr. Arden, the evidence was insufficient to sustain his conviction on eight counts of money laundering as charged in the Indictment. For the reasons set forth below, the Court denies Mr. Arden's Motion for Judgment of Acquittal on Counts 6 through 13.

**PROCEDURAL BACKGROUND**

A federal grand jury returned an Indictment on August 13, 1998, charging Reidar Carroll Arden with one count of conspiracy to engage in the interstate transportation of stolen securities valued at $5,000 or more in violation of 18 U.S.C. §371; four counts of interstate transportation of stolen securities valued at $5,000 or more in violation of 18 U.S.C. §2314; and eight counts of concealment money laundering, in violation of 18 U.S.C. §1956(a)(1)(B)(I). These eight counts of money laundering are the subject of the pending motion. The unlawful conduct at issue

allegedly occurred more than 15 years ago, between March 1993 and June 1994 when Mr. Arden, as the owner-operator of a Los Angeles-based telemarketing company[1], induced victims to send checks to his company by misleading them into thinking they had won valuable prizes or would receive large sums of money. The Indictment described the money laundering scheme as involving the purchasing from one of two coin companies in Southern California of gold coins and other similar valuables via wire transfers from a Bank of America account set up in Las Vegas with proceeds from the telemarketing scheme, thus hiding the origin of the ill-gotten wealth Mr. Arden was amassing.

Trial commenced on October 15, 2008.[2] At the close of the Government's case and again at the close of all the evidence, including Mr. Arden's own testimony and the Government's rebuttal presentation, Mr. Arden moved for judgment of acquittal. The Court reserved ruling on the motions. The jury found Mr. Arden guilty on all counts on October 24, 2008.

Within a week of the verdict, Mr. Arden submitted a written motion pursuant to Rules 29 and 33 for judgment of acquittal and for a new trial as to all counts. The motion requested leave to supplement his arguments upon review of the trial transcripts. By Order of November 17, 2008, the Court directed Mr. Arden to file and serve the supplement on or before December 3, 2008. Mr. Arden was directed to set out specifically the record citations and legal authorities on

---

[1] Mr. Arden's company had various names: VIP International ("VIP"), Morgan Kennedy Group ("MKG"), and American Liberty Group ("ALG"). Mr. Arden periodically used various combinations of all three names or with others, e.g., "VIP d/b/a ALG"; "Hanover and Hanover, Inc. d/b/a ALG."

[2] Mr. Arden lived for many years beyond the reach of U.S. law enforcement authorities, primarily in Brazil. Once he returned to the United States, the scheduling of his trial was the subject of a number of tribulations. Hence, the passage of many years since the return of the Indictment.

which he relied for his motion(s). No filing was made, and no relief from the Court's November 17, 2008 Order was requested until the June 2008 efforts commenced by Mr. Arden's latest attorney.[3] On March 5, 2009 Mr. Arden's trial counsel withdrew and his current attorney's appearance was entered. Mr. Arden's scheduled sentencing hearings were postponed at the defense request, most recently as a by-product of the filing of the present motion.

The pending Supplemental Motion for Judgment of Acquittal was filed on June 26, 2009. The Government opposes the Motion. As indicated, Mr. Arden's sentencing has been yet again rescheduled to July 24, 2009.

**STANDARD OF REVIEW**

Rule 29(a) provides as follows:

> (a) Before Submission to the Jury. After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction. The court may on its own consider whether the evidence is insufficient to sustain a conviction. If the court denies a motion for a judgment of acquittal at the close of the government's evidence, the defendant may offer evidence without having reserved the right to do so.

Rule 29(b) provides that the district court may reserve decision on the motion:

> (b) Reserving Decision. The court may reserve decision on the motion, proceed with the trial (where the motion is made before the close of all the evidence), submit the case to the jury, and decide the motion either before the jury returns a verdict or after it returns a verdict of guilty or is discharged without having returned a verdict. If the

[3] The Government expressly declines to argue Mr. Arden's waiver or the untimeliness of the arguments and issues presented in the pending Supplemental Motion. The Court has determined to consider the specific issues presented by Mr. Arden on their merit. However, the Court is not second-guessing what Mr. Arden's general assertions of claims for acquittal and/or a new trial immediately at the end of his trial may have intended, but appreciates the present filing on Mr. Arden's behalf as representing his only remaining specific arguments for the Court's review. Nonetheless, as set forth below, this denial of the Motion is intended to deny all of Mr. Arden's pending motions for post-trial relief.

> court reserves decision, it must decide the motion on the basis of the evidence at the time the ruling was reserved.

Rule 29(c) provides that the defendant may renew his motion for acquittal within seven days after the jury reaches a verdict, and that if the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal.

In considering a Rule 29 motion, the Court must review the evidence in the light most favorable to the Government. United States v. McKee, 506 F.3d 225, 232 (3d Cir. 2007). The Court does not re-weigh the evidence or re-assess witness credibility. Id. (citing United States v. Peppers, 302 F.3d 120, 126 (3d Cir. 2002)). Accordingly, the Court must sustain the verdict "'if a rational trier of fact could have found [the] defendant guilty beyond a reasonable doubt, and the verdict is supported by substantial evidence.'" Id. (quoting United States v. Coyle, 63 F.3d 1239, 1243 (3d Cir. 1995)). If there is substantial evidence to support the jury's determination, the Court will "'not disturb the verdict although on that evidence [the Court] might not have made the same decision.'" Id. at 232-33 (quoting United States v. Cooper, 121 F.3d 130, 133 (3d Cir. 1997) (citing United States v. Hannigan, 27 F.3d 890, 892 (3d Cir. 1994))). Thus, the Court's "inquiry is limited to determining whether the jury's verdict is permissible." Id. at 233 (citing United States v. McGill, 964 F.2d 222, 229 (3d Cir. 1992)). The Court is obliged to refrain from casting itself as a new, one-person jury. United States v. Flores, 454 F.3d 149, 154 (3d Cir. 2006) (district court to be vigilant not to usurp jury's role).

Thus, in keeping with the foregoing, the Court must give the Government the benefit of inferences to be drawn from the evidence. United States v. Hoffecker, 530 F.3d 137, 146 (3d Cir. 2008). Mr. Arden, as the proponent of the Rule 29 motion, bears a heavy burden to prove

that the evidence was insufficient to support the guilty verdict, so heavy that our Court of Appeals has held that acquittal should "'be confined to cases where the prosecution's failure is clear.'" United States v. Leon, 739 F.2d 885, 891 (3d Cir. 1984), quoting Burks v. United States, 437 U.S. 1, 17 (1978). See also United States v. Punigitore, 910 F.2d 1084, 1129 (3d Cir. 1990).

**FACTUAL RECORD**

The Government alleged in the Indictment and presented evidence at trial that Mr. Arden, the owner and operator of ALG, devised a fraudulent telemarketing scheme to cause victims to send checks to ALG using mail drops in Philadelphia and elsewhere. Likewise, the charges and the evidence attributed to Mr. Arden control over a corporate bank account at a Las Vegas branch of the Bank of America titled to "Hanover and Hanover, Inc. d/b/a American Liberty Group." Furthermore, the evidence supported the Indictment's claim that various coin dealers maintained specific accounts at specific banks to which approximately $110,800 of ALG funds, having been generated by the fraudulently gained victims' checks and deposited in the ALG Bank of America account, were wired in some eight transactions from the Bank of America. According to the evidence, the jury heard that the wire transfers were made in order to purchase collectible Gold Eagle Coins and South African Krugerrands by which the ill-gotten monies were concealed.

With respect to the underlying fraudulent activity itself, the jury heard from a number of Mr. Arden's employees, specifically Melinda Valencia, Gerry Gittleson, Randy Lopez, Marina Squires, William Roncher and David Godin. The practices instituted by Mr. Arden at ALG (and at the company under other names or iterations) as described by his underlings establish that Mr. Arden's enterprise existed to induce targeted victims to send ALG money by way of checks by hoodwinking the victims into believing they had won significant prizes. The same witnesses,

especially Ms. Valencia, Ms. Squires, and Mr. Godin, described the handling of incoming checks, i.e., their deposit into the ALG bank account, and the subsequent transactions with the coin dealers. Witness Richard Basile testified to having been contacted by "David Adams" (a pseudonym used by Mr. Arden in connection with the ALG business according to Ms. Valencia) to open a bank account at the Bank of America in Las Vegas for ALG, the account to which at least $175,000 of ALG's receipts from victims were then deposited. Some $110,800 was transferred in eight wire transactions from the Las Vegas account to the bank accounts of two specific coin dealers with whom Mr. Arden and his colleague, Mr. Godin, dealt. Mr. Arden had directed the wire transfers and, along with Mr. Godin, picked up coins that had been purchased with ALG monies.

As to whether Mr. Arden knew the fraudulent nature of his company's business and was keen on avoiding detection, the jury heard the witnesses testify about Mr. Arden's use of different mail drop locations around the country, in addition to the shifting of company names and locations, as well as his own use of different names. The jury heard the material features of the script Mr. Arden presented his "salesmen" to use with their targets and heard how those "salesmen" were trained to secure checks for ALG from their victims as large and as quickly as possible. The jury also was able to assess the credibility of the witnesses, including eventually Mr. Arden himself, as they each described Mr. Arden's conduct.

**DISCUSSION**

Mr. Arden's argument emanates from a highly demanding interpretation of the money laundering statute, 18 U.S.C. §1956. His argument is that, as charged in the Indictment and as demanded by statute, the Government was obliged, but failed, to establish that the money

laundering transactions charged in Counts 6 through 13 actually involved the proceeds of the fraudulently obtained checks that were the subject of Counts 2 through 5. However, Mr. Arden's argument is not supported by any cited case law that would demand such a nexus.[4]

The Court agrees with the Government that 18 U.S.C. §1956(a)(1) requires proof that the money laundering financial transaction involved the proceeds of some specific unlawful activity but does not require that the indictment necessarily charge the defendant with the specific unlawful activity or restrict money laundering counts to only the monies established in other counts charged in the same indictment. Although our Court of Appeals has not ruled on a similar argument as Mr. Arden advances here, the Government has cited United States v. Fernandez, 559 F.3d 303, 315 (5th Cir. 2009), a case where a defendant argued that the government failed to connect the money laundering transactions to specific drug sales. The Fifth Circuit Court of Appeals rejected the defense argument because the evidence permitted the jury to conclude that the defendant was the conduit of money transfers to and from the head of a drug cartel where the evidence also supported the findings of specified drug offenses and that the transfers were designed to conceal the funds' origins. Thus, the Court concluded that the Government was "under no duty" to trace the individual funds involved in particular transactions, or to examine a

[4] Mr. Arden's counsel suggests that a "Kierkegardian [sic] leap of faith" would be necessary to find sufficient evidence for conviction. Initially puzzled by the pairing of the philosopher Soren Kierkegaard with the concept of a "leap of faith," the Court's research suggests that the phrase "leap of faith" is actually commonly attributed to Kierkegaard. It seems, however, the philosopher himself never used the precise phrase. Kierkegaard wrote of a "leap to faith," suggesting a certain circularity insofar as a "leap" is typically thought to be made by faith. Hannay, Alastair, and Gordon Marino. (eds.) The Cambridge Corporation to Kierkegaard. Cambridge. See also Kierkegaard, Soren. The Concept of Anxiety, edited by Reidar Thomte (1980). Princeton: Princeton University Press. In any case, the Court concludes that no "leap" is needed here because the evidence provided the jury with a solid, step-by-step sufficiently grounded path from allegation to conviction.

transaction "wholly in isolation if the evidence tends to show that it is part of a larger scheme that is designed to conceal illegal proceeds." Fernandez, at 315 (citing United States v. Rodriguez, 278 F.3d 486, 491 (5th Cir. 2002).

This Court likewise concludes that the fungible nature of money does not run headlong into virtually insurmountable and impermeable obstacles to a money laundering prosecution such as the one here. Indeed, given this fungible nature of money, the Court cannot escape the conclusion that it would be pointless to essentially require the Government to "tag" the victim's monies so that it could be traced step-by-step through the financial system and segregated from all the other similarly ill-gotten money. The evidence against Mr. Arden at his trial was more than sufficient for the jury to conclude with confidence that Mr. Arden was the leader - - indeed the designer - - of the fraudulent telemarketing scheme, that the funds in the ALG bank account were the proceeds of that illegal scheme, that Mr. Arden further devised and effectuated the plan to conceal the illegal origins of his company's money by purchasing the collectible coins.

To the extent that Mr. Arden endeavors to create his especially high demands by the unique blend of this particular Indictment with Section 1956(a)(1) or by suggesting some impermissible constructive amendment or prejudicial variance of the Indictment at trial, the Court rejects such arguments. As to the former, the Court considers the defense effort to be tantamount to trying to turn the Indictment from a tool of fair notification to a defendant of the charges against him into an intricate maze of unintended, highly sensitive land mines designed only to insulate the defendant from the very charges he has been made aware of.

With respect to the latter, considerable discussion in a host of cases highlights the lines of demarcation between impermissible constructive amendments or variances of an indictment on

the one hand and inoffensive differences between the language in the indictment and the trial evidence on the other. "There are two types of variations between the charges in an indictment and the evidence at trial: (1) amendments of the indictment when its charging terms are altered; and (2) variances, where the charging terms of the indictment are not changed but when the evidence at the trial proves facts materially different from those alleged in the indictment." United States v. Daraio, 445 F.3d 253, 259 (3d Cir. 2006) (citing United States v. Castro, 776 F.2d 1118, 1121 (3d Cir. 1985)).

"An indictment is constructively amended when, in the absence of a formal amendment, the evidence and jury instructions at trial modify essential terms of the charged offense in such a way that there is a substantial likelihood that the jury may have convicted the defendant for an offense differing from the offense the indictment returned by the grand jury actually charged." Id. at 259-60. Thus, "'a court cannot permit a defendant to be tried on charges that are not made in the indictment against him.'" Id. at 260 (quoting Stirone v. United States, 361 U.S. 212, 217 (1960)). "'The key inquiry is whether the defendant was convicted of the same conduct for which he was indicted.'" Id. (citing United States v. Robles-Vertiz, 155 F.3d 725, 729 (5th Cir. 1998).

The court of appeals has recognized that "'the line between a constructive amendment and a variance is at times difficult to draw.'" Id. at 261 (quoting United States v. Adamson, 291 F.3d 606, 615 (9th Cir. 2002). There is a variance "'where the charging terms [of the indictment] are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment.'" Id. (quoting Castro, 776 F.2d at 1121). The court stated:

When there has not been a constructive amendment of the indictment but rather there

> only has been a variance between the facts alleged in the indictment and the evidence offered at trial, the proceedings at the trial will not have usurped the constitutionally guaranteed role of the grand jury. Instead, the concerns raised by a variance argument are the fairness of the trial and the protection of the defendant's right to notice of the charges against her and her opportunity to be heard.

Id. (citing Kotteakos v. United States, 328 U.S. 750, 757-58 (1946); Berger v. United States, 295 U.S. 78, 81-82 (1935)). "'[T]he variance rule, to the extent that it is constitutionally required, is more of a due process rule than is the flat fifth amendment prohibition against being tried on an indictment which a grand jury never returned.'" Daraio, 445 F.3d at 261-62 (quoting United States v. Crocker, 568 F.2d 1049, 1059 (3d Cir. 1977)). In order to reverse a conviction due to a variance, the variance must be likely to have surprised or otherwise has prejudiced the defense. See United States v. Schurr, 775 F.2d 549, 553-54 (3d Cir. 1985). To demonstrate prejudice from a variance, a defendant "must show (1) that there was a variance between the indictment and the proof adduced at trial and (2) that the variance prejudiced some substantial right." United States v. Balter, 91 F.3d 427, 441 (3d Cir. 1996). "A variance does not prejudice a defendant's substantial rights (1) if the indictment sufficiently informs the defendant of the charges against him so that he may prepare his defense and not be misled or surprised at trial, [or] (2) if the variance is not such that it will present a danger that the defendant may be prosecuted a second time for the same offense." United States v. Schoenhut, 576 F.2d 1010, 1021-22 (3d Cir. 1978); see United States v. Daraio, 445 F.3d 253, 262 (3d Cir. 2006).

To charge a defendant with money laundering, the indictment must charge that the money laundering transactions involve proceeds from a specified unlawful activity. Money laundering charges do not demand that the indictment also allege all of the elements of the "specified

unlawful activity," that is, the underlying crime. See United States v. Lazarenko, 564 F.3d 1026, 1033 (9th Cir. 2009). Here, the indictment - - and the evidence adduced at trial - - sufficiently put Mr. Arden on notice of the charges against him, pled the requisite elements, presented no surprise to Mr. Arden, subjected him to no prejudice and more than sufficiently permitted the jury's conviction of Mr. Arden on all counts.[5]

**CONCLUSION**

For the foregoing reasons, the Court denies the post-trial motion(s) of Reidar Arden and enters the accompanying Order.

BY THE COURT:

/s/ Gene E.K. Pratter
Gene E.K. Pratter
*United States District Judge*

[5]There is some suggestion throughout the defense papers that, without spelling out the grounds, the defense hoped to maintain a hold upon the "generalized," e.g., imprecise, motion for acquittal or a new trial made immediately after the trial. Having reviewed the trial record for purposes of this Supplemental Motion, the Court has uncovered no lack or insufficiency of evidence on any requisite element of any count to permit the Court to hazard a guess as to any ground, articulated or not, for ordering Mr. Arden's acquittal or a new trial. Thus, this denial of Mr. Arden's motion shall extend to the full breadth Mr. Arden's post-trial motion(s).